FILED
2019 Jun-12 PM 04:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| **DIANNE MCNAIR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **THE BOARD OF TRUSTEES OF** | ) | |
| **THE UNIVERSITY OF** | ) | |
| **ALABAMA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## PLAINTIFF'S COMPLAINT

---

COMES NOW the Plaintiff, Dianne McNair (hereinafter referred to as "Ms. McNair" or "Plaintiff"), by and through her undersigned counsel, and files this Complaint against the Defendant, The Board of Trustees of the University of Alabama (hereinafter referred to as "UAB" or "Defendant"). As grounds for this Complaint, Plaintiff states the following:

### JURISDICTION AND VENUE

1.    This is a suit authorized and brought to secure protection of and to redress the deprivation of rights secured by Title VII of the Act of Congress known as the "Civil Rights Act of 1964," codified at 42 U.S.C. § 2000e *et seq.*, as amended

1

by the "Civil Rights Act of 1991," (hereinafter referred to collectively as "Title VII") and the Equal Pay Act of 1963, as amended, 29 U.S.C. § 206(d) *et seq.* (hereinafter referred to as the "EPA").

2.    Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.

3.    The venue of this action is properly placed in the Northern District of Alabama pursuant to 28 U.S.C. 1391 because Plaintiff's claims accrued in Jefferson County, Alabama.

## ADMINISTRATIVE EXHAUSTION

4.    Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (hereinafter referred to as the "EEOC") on or about September 20, 2018. (See Exhibit "A"). Charge No. 420-2018-04043 (hereinafter referred to as the "Charge") alleged gender discrimination in violation of Title VII.

5.    The EEOC issued a Dismissal and Notice of Suit Rights (hereinafter referred to as "RTS Notice") for the Charge on March 14, 2019.

6.    Plaintiff received a copy of the RTS Notice for the Charge on March 15, 2019. (See Exhibit "B").

7.    This Complaint is filed within ninety (90) days of Plaintiff's receipt of the RTS Notice for the Charge.

8.     Plaintiff has thus exhausted all administrative remedies available prior to filing the Complaint.

## PARTIES

9.     Plaintiff is a citizen of the United States of America, who currently resides in Jefferson County, Alabama.

10.     Plaintiff is over the age of nineteen (19).

11.     Defendant, UAB, is an "employer" within the meaning of Title VII and the EPA.

12.     UAB was Plaintiff's employer during all times relevant to this cause of action.

13.     The events underlying this cause of action occurred in Jefferson County, Alabama, at 1720 2nd Avenue South, Birmingham, Alabama 35294.

## FACTUAL ALLEGATIONS

14.     Plaintiff re-alleges and incorporates paragraphs one (1) through thirteen (13) of this Complaint, as if fully set forth herein.

15.     On or about October 8, 2007, Defendant hired Plaintiff as a Program Coordinator II.

16.     As a Program Coordinator II, Plaintiff worked with Bill Hitchcock ("Dr. Hitchcock") in developing an online graduate degree program geared towards

working professionals, known as the Construction Engineering Management Masters Program ("CEM Program").

17.    While UAB initiated the CEM Program prior to Plaintiff's start date, they did not authorize the Program until on or about–November 7, 2007, after Plaintiff developed and built up the Program.

18.    Defendant hired Dr. Hitchcock as the first CEM Program Director in or around June 2005.

19.    Plaintiff co-founded the CEM Program with Dr. Hitchcock.

20.    Defendant's website currently states, "Ms. Dianne Gilmer[1], implemented the online program in 2009."

21.    Plaintiff successfully recruited the first cohort of students; she and Dr. Hitchcock developed a full curriculum that consisted of a 33-credit hour degree program; she created the program logistics, vision, mission, objectives, and 12-month goals; and generated revenue for the CEM Program.

22.    From the inception of the CEM Program, Defendant has, and continues, to recognize Plaintiff as the face of the CEM Program, directing all students, current and prospective, as well as faculty and staff, to contact Plaintiff for all matters related to the CEM Program.

---

[1] Plaintiff has since married and taken up the last name "McNair."

4

23.    From the beginning of the CEM Program, Plaintiff has been an integral part of the CEM program and has been heavily involved in all aspects of planning, establishing the CEM curriculum, and budgeting, all of which have made the CEM Program the most successful online graduate program in the SOE to date.

24.    Based off Plaintiff's success in developing the CEM Program, Defendant promoted Plaintiff to a Non-Tenured Instructor position, in December 2009, contingent upon her completion of a Masters in Construction Engineering Management.

25.    With the new role, it was understood that Plaintiff would continue her involvement in directing the CEM Program.

26.    Plaintiff obtained her Masters in Construction Management with the understanding that it would better her in directing the CEM Program and that Defendant would recognize her degree for the purpose of future promotions.

27.    To this day, Plaintiff remains at the Instructor level, even with her Masters Degree and the enormous success of the CEM Program.

28.    As a point of fact, Defendant has not promoted Plaintiff in over ten (10) years, even though her duties have long outgrown the title and pay of an Instructor.

29.    In 2011, Dr. Hitchcock, who co-founded the CEM program with Plaintiff, announced that he would move to College Station, Texas. Dr. Hitchcock

kept the CEM Director title, despite no longer residing in Alabama, but handed all day-to-day CEM Director duties to Plaintiff.

30.     As time progressed, Plaintiff undertook more CEM Program Director responsibilities until she eventually operated as the sole CEM Program Director. Dr. Hitchcock still taught online classes and was provided daily program updates via telephone or Skype while Plaintiff was in Birmingham running the program.

31.     For example, Plaintiff attended all Program Director meetings on behalf of the CEM Program and hosted the CEM Program Boot Camp orientation for all incoming students.

32.     Dr. Fouad H. Fouad ("Dr. Fouad") is the Chairman of the Civil Engineering Department at UAB and, in this capacity, oversees the CEM Program.

33.     On May 21, 2016, Dr. Hitchcock emailed Dr. Fouad requesting that he create a "Director of Online Instruction, Recruiting and Student Support" position for Plaintiff.

34.     As CEM Director, Dr. Hitchcock created and budgeted for the second Director position, presumably with Plaintiff in mind.

35.     In his May 21, 2016 email to Dr. Fouad, Dr. Hitchcock stated, "Dianne [McNair] will have completed 9 years at UAB by Fall 2016 and she personifies the content of the vault of specialty knowledge developed over the history of the MEng Online initiative at UAB."

6

36.     Dr. Hitchcock attached a proposed job description and a job description worksheet for the Director position.

37.     The proposed job description and worksheet included all of the Director duties Plaintiff was already fulfilling.

38.     Essentially, Dr. Hitchcock asked UAB to finally recognize Plaintiff as Director, her contributions to the institution, and compensate her accordingly, because she already served in that role.

39.     Faculty, students, and even Dr. Hitchcock recognized that Plaintiff directed the CEM Program.

40.     Dr. Fouad, however, refused to recognize Plaintiff as Director of the CEM Program.

41.     Defendant refused to accept the proposed Director appointment of Plaintiff and continued to pay her less than her actual duties warranted.

42.     On August 20, 2016, Dr. Hitchcock emailed Plaintiff, recognizing that Defendant should promote her to the CEM Program Director position.

43.     In that email, Dr. Hitchcock acknowledged that other male employees would be "incensed" if Plaintiff received the Director title and a 12-month guaranteed salary that was more than their pay.

44.     In or around May 2017, Dr. Hitchcock announced his retirement from the CEM Director role.

45. Defendant ended Dr. Hitchcock's duties as CEM Program Director, effective May 4, 2017.

46. At the time of his retirement, Dr. Hitchcock earned $217,000.00 as "CEM Program Director," while Plaintiff only earned approximately $116,000.00, notwithstanding the fact that she fulfilled all CEM Program Director duties.

47. Defendant knowingly paid Plaintiff substantially less than Dr. Hitchcock, even though she performed all CEM Program Director functions.

48. When Dr. Hitchcock retired in June 2017, Dr. Fouad promoted himself to the Interim CEM Director position instead of making the logical decision to promote Plaintiff.

49. Dr. Fouad informed Plaintiff that Defendant would not consider her for the position, despite her expressed interest and superior qualifications for the position.

50. Dr. Fouad did not have knowledge regarding the details of the CEM Program, nor did Dr. Fouad teach, advise, or recruit for the CEM Program.

51. Even Dr. Fouad recognized that Plaintiff was more qualified for the CEM Director position than himself. As of June 1, 2017, Dr. Fouad provided Plaintiff a temporary raise of 8.33% to compensate her for "increased" duties associated with the Director position.

52.     Dr. Fouad "increased" Plaintiff's duties to assist him in directing the CEM Program because he did not know how to direct the CEM Program but knew that Plaintiff had the necessary experience to direct the Program.

53.     Plaintiff already fulfilled all of the listed duties.

54.     The listed duties included: curriculum development; recruitment of new students in the program; student advising; interviews of potential students; and assessment of learning outcomes.

55.     Even after the temporary increase, equivalent to one (1) month's salary, Plaintiff still earned substantially less than other, male, CEM Program Directors.

56.     Around that same time, Mr. Allen Murphree ("Mr. Murphree"), CEM Instructor, and Ms. Francoise Lefort ("Ms. Lefort"), CEM Instructional Design Manager, emailed J. Iwan D. Alexander, Dean of UAB's School of Engineering, and Dr. Fouad recommending Plaintiff for the permanent CEM Director position.

57.     They stated, "[p]lease give your full consideration to empower Ms. [McNair] with the status of CECM Director, since she has essentially been performing these duties since year 2009."

58.     Recognizing Plaintiff as a co-founder of the program, the email also stated, "[n]obody understands the CECM daily operations and business model better [than Dianne]."

59.     Dr. Fouad discussed creating a new Director position for Plaintiff.

60.    On July 24, 2018, Plaintiff followed up with Dr. Fouad, asking about the promised promotion and title change.

61.    Dr. Fouad did not respond to Plaintiff's email.

62.    On July 26, 2018, Plaintiff emailed Dr. Fouad updating him on the progress and success of the CEM Program, asking him to recognize her hard work through a promotion.

63.    On July 30, 2018, Dr. Fouad responded, "[c]ertainly should be highly recognized."

64.    Dr. Fouad failed to update Plaintiff on the status of a promotion.

65.    Again, on August 15, 2018, Plaintiff emailed Dr. Fouad, "Last time we met, you said you would know something about the promotion and raises last week."

66.    Dr. Fouad did not respond.

67.    Soon after, Defendant hired another male, Dr. Wesley Zech ("Dr. Zech") to the CEM Director position.

68.    At the time of hire, Dr. Zech was patently unfamiliar with the CEM Program; he had no prior experience with teaching online courses or directing online graduate programs.

69.    Defendant chose to overlook the most qualified candidate for the position, ignoring the fact that she had been the CEM Director, in reality, for many years.

70.     Plaintiff constantly expressed her sincere interest in the CEM Director position.

71.     Defendant ignored Plaintiff's exceptional and unparalleled experience, knowledge, and dedication to the CEM Program.

72.     Defendant has only employed male CEM Program Directors, even though Plaintiff has acted as its director for years.

73.     Defendant promoted less qualified males to the CEM Director position.

74.     Moreover, Defendant fails to adequately compensate Plaintiff for the work she is doing, irrespective of title.

75.     Plaintiff has eleven (11) years of service to UAB, essentially the same as Dr. Hitchcock at the time of his retirement, yet Defendant pays Plaintiff substantially less than it paid him at the time of his retirement, even though Plaintiff fulfills all of the duties that Dr. Hitchcock performed.

76.     Dr. Zech earns $200,000.00 as the CEM Program Director, while Plaintiff earns $126,000.00, despite the fact that she fulfills the Director duties and she has advanced experience with the Program.

77.     Notably, while Dr. Zech retains the CEM Director title, Plaintiff will continue to fulfill the CEM Director duties, but at a significantly lower salary.

78.    Additionally, Defendant pays other School of Engineering Program Directors, who are male, more than Plaintiff, even though CEM is the biggest and oldest online graduate program in the School of Engineering.

79.    For reference, Dr. Donald Burke ("Dr. Burke"), Director of Advanced Safety Engineering and Management ("ASEM"), earns approximately $142,000.00, even though he and Plaintiff attend the same Program Director meetings and have the same obligations for directing their respective programs. Dr. Burke has been an employee at UAB for approximately five (5) years while the Plaintiff has been employed by UAB for approximately eleven (11) years.

80.    Defendant continues to pay Plaintiff significantly less than other male Program Directors despite her identical duties and advanced experience.

81.    Plaintiff's gender motivated Defendant's decision to repeatedly pass Plaintiff over for the CEM Director position.

82.    Plaintiff's gender motivates Defendant's decision to compensate Plaintiff less than other male Directors, despite their equivalent duties.

83.    Defendant continues to discriminate against Plaintiff based on her gender.

## COUNT I- GENDER DISCRIMINATION IN VIOLATION OF TITLE VII

84.    Plaintiff re-alleges and incorporates paragraphs one (1) through eighty-three (83) of this Complaint, as if fully set forth herein.

85.     Plaintiff is female.

86.     Plaintiff was and remains qualified to perform the duties of the CEM Director position.

87.     Defendant recognized Plaintiff's qualifications for the CEM Director position by permitting her to fulfill all of the CEM Director duties, including recruiting, advising all CEM students, hosting the CEM Program Boot Camp and attending Program Director meetings, in addition to handling all of the other day-to-day operations of the CEM Program without any supervision.

88.     Plaintiff is the single point of contact for the CEM Program

89.     Previous Directors, faculty, and students all recognize Plaintiff as the CEM Director, with exception to Dr. Fouad.

90.     Previous Directors, as well as other faculty and staff, advocated on Plaintiff's behalf to Defendant to promote Plaintiff to the CEM Director role because she is the most qualified for the position.

91.     Despite recognizing Plaintiff's qualifications, Defendant repeatedly passed Plaintiff over for promotions to the CEM Director position in favor of less knowledgeable, less qualified males.

92.     Defendant ignored Plaintiff's glaring superior qualifications and promoted less qualified males.

93.     Defendant knew of Plaintiff's expressed interest in the position.

13

94.     Defendant made it known that it would not promote Plaintiff to the Director position, even though it recognized her qualifications and let her perform all of the listed duties associated with the position.

95.     Defendant also discriminated against Plaintiff by paying her significantly less than other male Program Directors, even though she completed all of the same responsibilities.

96.     As mentioned above, Plaintiff completed all of the same Director duties as Dr. Hitchcock, Dr. Fouad, Dr. Zech, Dr. Burke, and others.

97.     However, Defendant paid Plaintiff substantially less than those males.

98.     At the time of Dr. Hitchcock's retirement, he earned approximately $217,000.00, while Plaintiff earned approximately $116,000.00, even though she had been doing the very same job as him since 2011.

99.     Additionally, Dr. Zech, the new CEM Director, is currently earning approximately $200,000.00, while Plaintiff maintains all of the Director duties and only earns $126,000.00.

100.    Dr. Burke, a Program Director in the School of Engineering, earns significantly more than Plaintiff, despite their identical responsibilities.

101.    Defendant continues to pay Plaintiff substantially less than other male Directors, despite recognizing their identical obligations as Program Directors.

102.    Defendant continues to discriminate against Plaintiff with respect to the terms and conditions of her employment by not promoting her to the CEM Director position and paying her substantially less than other male Directors, despite her superior qualifications, a decision by UAB which is motivated by Plaintiff's gender, female.

103.    As a result of UAB's conduct, Plaintiff has been deprived of income. The conduct described above also causes Plaintiff emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and embarrassment.

## COUNT II- VIOLATION OF THE EQUAL PAY ACT

104.    Plaintiff re-alleges and incorporates paragraphs one (1) through one-hundred and three (103) of this Complaint, as if fully set forth herein.

105.    Plaintiff is similarly situated with other male Program Directors within the School of Engineering, specifically Dr. Hitchcock at the time of his retirement, Dr. Zech, and Dr. Burke.

106.    Plaintiff does equal work to that performed by other male Program Directors, which requires equal skill and responsibility.

107.    Plaintiff has more experience directing the CEM Program than any other Program Director in the program's history; specifically, more experience than Dr. Zech.

108.    Defendant continues to pay Plaintiff substantially less than Dr. Zech, and other male Program Directors, despite her superior qualifications and experience directing the CEM Program.

109.    Defendant, for many years, has been fully aware of the fact that it pays Plaintiff substantially less than other male Program Directors, even though she has effectively served in that role for many years.

110.    Defendant continues to discriminate against Plaintiff with respect to the terms and conditions of her employment by paying her less than similarly situated male employees, a decision by UAB which is motivated by Plaintiff's gender, female.

111.    As a result of UAB's conduct, Plaintiff has been deprived of income. The conduct described above also causes Plaintiff emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and embarrassment.

WHEREFORE, premises considered, Plaintiff demands judgment against UAB for back wages, compensatory and punitive damages, consequential damages, incidental damages, costs and expenses of this action, including interest, attorney's fees, and any other relief to which she may be entitled.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY.**

Respectfully submitted,


Joshua A. Wrady (ASB-9617-J68W)
*Attorney for Plaintiff*


WRADY & MICHEL, LLC
505 20th Street North Suite 1650
Birmingham, Alabama 35203
Joshua@wmalabamalaw.com
Tel:    (205) 980-5704
Fax:    (205) 994-2819

17